UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HAROLD SUMMERS,

    Plaintiff,

v.

Case No. 20-cv-1453-bhl

KILOLO KIJAKAZI,[1] Acting Commissioner
of Social Security Administration,

    Defendant.

## DECISION AND ORDER

    Plaintiff Harold Summers seeks the reversal and remand of the Acting Commissioner of Social Security's decision denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

### PROCEDURAL BACKGROUND

    Summers applied for DIB on September 20, 2018, alleging a disability onset date of October 11, 2016, just over a year before his last date insured, December 31, 2017. (ECF No. 13 at 1.) His claim was denied initially and on reconsideration, so he sought a hearing before an administrative law judge (ALJ). (*Id.*) That hearing occurred on December 10, 2019. (*Id.*) In a decision dated January 28, 2020, the ALJ found Summers "not disabled" as of his date last insured. (*Id.*) The Appeals Council denied his request for review, and this action followed. (*Id.*)

### FACTUAL BACKGROUND

    On October 11, 2016, while working as a delivery driver, Summers was attacked by a 110-pound dog. (*Id.* at 3.) He suffered significant back and neck injuries, both of which eventually required surgical intervention. (*Id.* at 5-6.) At the time of his hearing before the ALJ, Summers

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

testified that he lived with his wife and son and relied on them to tie his shoes, bathe him, and prepare his meals. (ECF No. 12-3 at 44-46.) Based on his testimony and the record evidence, the ALJ found that Summers had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and obesity. (*Id.* at 16.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Summers argues that the ALJ's residual functional capacity (RFC) analysis improperly failed to include all of the limitations supported by the medical evidence because the ALJ erroneously: (1) found Summers' statements were not entirely consistent with the record; and (2) discredited the 2018 opinion of Dr. Mark Chelmowski and 2019 opinion of Dr. James Cain. Because the ALJ's decision rests on substantial evidence, it will be affirmed.

**I.     The ALJ's RFC Properly Accounted for All Limitations Supported by the Medical Evidence of Record.**

A claimant's residual functional capacity or RFC is "an assessment of what work-related activities the claimant can perform despite h[is] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563

(7th Cir. 2009). And "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *7 (July 2, 1996). In other words, the ALJ must build a "logical bridge" between the evidence of record and the RFC assessed. *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).

In this case, the ALJ found:

> [T]hrough the date last insured, [Summers] had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, stooping, crouching, kneeling, crawling; occasional bilateral overhead reaching; and, avoid concentrated exposure to extreme cold, heat, vibration, to use of moving machinery, and to unprotected heights.

(ECF No. 12-3 at 17.) Summers argues that he also required an assistive device for balance and the freedom to sit and stand at will. The ALJ considered these possible limitations but ultimately found that the record did not support their inclusion. This proved consequential when the vocational expert (VE) testified that, based on the ALJ's RFC assessment, as of his date last insured, Summers could have performed past relevant work as a customer service representative. (ECF No. 12-3 at 62.) Either of Summers' proposed additional limitations would have precluded this conclusion, (ECF No. 12-3 at 63-64), and Summers would have proceeded to step five, where he likely would have been deemed disabled as a result of his advanced age. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.06, 202.06.

In short, this case essentially boils down to whether the ALJ's decision to exclude Summers' proposed limitations rests on substantial evidence. Resolution of this issue requires an evaluation of the ALJ's credibility determination and assessment of the relevant medical opinions.

**A. The ALJ's Credibility Determination was Not "Patently Wrong."**

Although he found that Summers' "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," the ALJ also noted that Summers' "statements concerning the intensity, persistence and limiting effects of" those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 12-3 at 20.) Based on this credibility analysis, the ALJ rejected Summers' contention that he needed a cane for balance and the option to sit and stand at will. Summers argues this constitutes reversible error.

A Court should disturb an ALJ's credibility finding only if it is "patently wrong." *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). And a credibility finding is not "patently

wrong" if the ALJ discredited the claimant's subjective testimony based on "many specific reasons supported by the evidence." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018). To discredit Summers' testimony in this case, the ALJ pointed to six different things: (1) treatment notes indicating good recovery post-lumbar surgery; (2) Dr. Cain's December 2017 work release; (3) evidence indicating that Summers did not use a cane indoors; (4) the fact that Summers did not pursue significant treatment for his neck until after his date last insured; (5) Summers' ability "to perform a range of activities;" and (6) imaging showing good progression of his lumbar fusion. (ECF No. 12-3 at 19-21.) Summers' position is that all of this misconstrues the record. While not perfect, the ALJ's analysis is also not "patently wrong." *See Hall*, 906 F.3d at 644 (holding that two deficiencies in an ALJ's reasoning did not undermine broader conclusions based on a variety of evidence).

Summers first correctly argues that "good recovery" does not imply an ability to enter the workforce. The Seventh Circuit has recognized "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). But under SSR 16-3p, when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, ALJs are instructed to consider "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms." SSR 16-3p, 2017 WL 5180304, *8 (Oct. 25, 2017). While it is improper to conflate mere relief with full recovery, the ALJ in this case never did so. He simply highlighted the divergence between Summers' testimony and his generally positive progression post-surgery.

Summers next asserts that the ALJ misread Dr. Cain's December 2017 work release. According to treatment notes, at an appointment on October 11, 2017, Dr. Cain imposed "light duty restrictions," and two months later, gave Summers a "work release." (ECF No. 12-8 at 16, 18.) The ALJ took this to mean that—just prior to his date last insured—Dr. Cain thought Summers capable of "light work" as defined in 20 C.F.R. Section 404.1567. (ECF No. 12-3 at 22.) But in the same note in which he issued Summers a work release, Dr. Cain also indicated that Summers had "advanced to *17 pounds* lifting capacity through therapy." (ECF No. 12-8 at 17) (emphasis added.) As the Social Security Administration uses the term, "light work" requires the ability to lift "no more than *20 pounds* at a time." 20 C.F.R. §404.1567(b) (emphasis added.) Therefore, Dr. Cain's "light duty restrictions" are not coextensive with "light work" as defined in Title 20. The ALJ appears to have misunderstood this. But a misstep only becomes a fatal flaw

when it impacts the result.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).  In this case, whether Dr. Cain released Summers to light or sedentary work as defined in the regulations is irrelevant because the VE testified that Summers could still perform his past relevant work if limited to the sedentary exertion level.  (ECF No. 12-3 at 62.)  And even if Dr. Cain only released Summers to sedentary work, the work release remains at odds with Summers' testimony that he could not work at all and, thus, constitutes evidence supporting the ALJ's credibility determination.

Summers further argues that the ALJ wrongly stated that "the record does not show that he consistently used [a cane] or required it when indoors."  (ECF No. 12-3 at 21.)  He cites a litany of treatment notes that reflect regular cane usage.  (ECF No. 13 at 10-11.)  But, as the ALJ underscored, on December 13, 2017—less than three weeks before his date last insured—Dr. Cain recorded that Summers had a normal gait and only used a cane when outdoors.  (ECF No 12-8 at 17-18.)  Summers considers this impermissible "cherry-picking" because it ignores, for example, physical therapy notes from earlier in 2017 that indicated use of a cane.  (ECF No. 13 at 11.)  An ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  But the ALJ did not "ignore" evidence of cane usage; he emphasized that after months of physical therapy, Summers improved to the point that he no longer required a cane indoors.  None of the prior medical notes negate that conclusion.  And Dr. Cain's remarks belie Summers' testimony that he relied on assistive devices when indoors and were therefore appropriately considered as part of the credibility determination.

Summers next takes issue with the ALJ's characterization of his neck injury.  The ALJ wrote that while Summers "reported symptoms prior to his date last insured, he did not pursue significant [neck] treatment until January 2018, after the date last insured."  (ECF No. 12-3 at 21.)  This is true, but what the ALJ skips over is that Dr. Cain recommended delaying neck surgery because Summers' lower back pain was more bothersome and treating both issues simultaneously would have proven impractical.  (ECF No. 12-8 at 6-7.)  Delayed treatment did not, therefore, indicate the absence of a serious neck injury as of the date last insured.  In fact, an updated cervical MRI taken in February 2019 revealed findings almost identical to those that existed prior to December 31, 2017.  (ECF No. 13 at 19.)  Although ALJs generally prefer contemporaneous evidence, they must consider evidence that postdates the date last insured when that evidence

suggests problems of a long-standing nature. *See Ray v. Bowen*, 843 F.2d 998, 1005 (7th Cir. 1988). The ALJ in this case should not have used Summers' delayed neck treatment to discredit his subjective testimony. That said, the ALJ's credibility determination rests on plenty of other grounds, and Summers does not argue (nor is there any reason to believe) that consideration of neck pain would have resulted in an RFC that rendered him incapable of performing his past relevant work. This is especially true because, in December 2017, although he knew the full extent of Summers' neck injury, Dr. Cain released Summers to at least sedentary work without any mention of limitations that might preclude work as a customer service representative. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (When an ALJ adopts the opinion of a physician who considered an impairment, that impairment is "factored indirectly into the ALJ's decision.").

More problematic is the ALJ's reliance on Summers' activities of daily living. The ALJ believed that Summers' daily activities contradicted his alleged limitations. (ECF No. 12-3 at 22.) A claimant's daily activities are a factor the ALJ must consider in his credibility determination. *See* SSR 16-3p. But in this case, the ALJ only cited activities Summers performed in March 2017, prior to his first surgery. (ECF No. 12-3 at 22.) Summers testified that he was significantly more limited after the operation. Obviously, that testimony is not inconsistent with his stated ability to vacuum, sweep floors, or carry groceries *pre*-operation. (*Id.*) Again, though, while the ALJ's logic is suspect, it is not grounds for reversal because his credibility determination depends on much more than Summers' daily activities.

Finally, Summers challenges the ALJ's reliance on imaging that revealed "good progression" following the lumbar fusion. He argues that the ALJ was not qualified to interpret medical imaging and "succumb[ed] to the temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). But the ALJ borrowed the "good progression" language directly from Dr. Cain's treatment notes. (*See* ECF No. 12-8 at 12-18 (stating that "x-rays today look very good," "x-rays of the lumbar fusion do look good," "x-rays today shows that his fusion is progressively incorporating at L5-S1," "x-rays today looked very good," and "excellent progress L5-S1 fusion")). Dr. Cain was not playing doctor; he is one. And the ALJ was entitled to consider whether his notes corroborated Summers' account.

In sum, the ALJ did not render a perfect credibility determination, but he did not need to. His analysis was not "patently wrong" and must, therefore, be affirmed.

### B. The ALJ Properly Explained Why He Found Certain Medical Opinions Unpersuasive.

The ALJ found two medical opinions—the 2018 opinion of Summers' primary care physician, Dr. Mark Chelmowski, and the 2019 opinion of Dr. Cain—"not persuasive." (ECF No. 12-3 at 23-25.) Summers argues the ALJ made these findings improperly.

When evaluating and articulating the persuasiveness of a medical opinion, ALJs should consider supportability, consistency, the medical provider's relationship with the claimant, any specializations, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §416.920c(c)(1-5). Of these, supportability and consistency are the most important. *Id.* (b)(2).

Dr. Chelmowski opined that Summers:

> could sit and stand each for twenty minutes at a time, stand for ten minutes at a time, and sit and stand/walk each less than two hours in a day. He provided [Summers] would need to elevate his legs between heart and waist level for two hours during a typical eight-hour day. He stated that [Summers] could never lift and carry less than ten pounds, never twist or stoop, occasionally handle bilaterally, frequently finger on the right but constantly finger on the left, and occasionally reach overhead. He stated that [Summers] required a cane due to lower extremity weakness, pain and imbalance and that [Summers] could not ambulate effectively on a sustained basis without companion assistance. He stated [Summers] used a cane about once per week, depending on activity, when he felt weak and unstable. He stated that [Summers] would be absent more than four days per month. He opined that these limitations had been necessary since at least December 2016.

(ECF No. 12-3 at 23-24.) The ALJ concluded that this opinion was "not consistent with or supported by the record." (*Id.* at 24.) He relied largely on the same objective evidence he used to discredit Summers' subjective testimony—improvement in symptoms; good progression of the lumbar spine fusion; normal, unassisted gate indoors; normal muscle bulk and tone; intact sensation, full strength, delayed neck treatment, and daily activities. (*Id.*) As previously addressed, some of these rationales are better than others. What matters, though, is whether, in the aggregate, the ALJ articulated why he found Dr. Chelmowski unpersuasive. An "ALJ may discount even a treating physician's opinion if it is inconsistent with the medical record." *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. 2013). And courts uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010). Here, the ALJ demonstrated how Dr. Chelmowski's extreme opinion deviated from that of nearly every other medical professional in the record. He also

explained why the objective evidence did not support many of Dr. Chelmowski's opined limitations. That is more than enough to satisfy the lenient "substantial evidence" standard. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). And once that threshold is crossed, this Court is forbidden to "reweigh the evidence or substitute [its] judgment for that of the ALJ's." *Pepper*, 712 F.3d at 362.

In an opinion rendered in November 2019, Dr. Cain limited Summers to sedentary work and stated that he would require "a position that permitted alternate sitting and standing as needed." (ECF No. 12-3 at 25.) The ALJ rejected this opinion in favor of the one Dr. Cain issued in 2017. (*Id.* at 24-25.) He did so because the 2017 opinion was issued just prior to Summers' date last insured, while the 2019 opinion came two years after that date and took "into account symptom reports, imaging studies, clinical examinations and treatment not relevant to this decision." (*Id.* at 25.) An ALJ is entitled to give an opinion based on "strong contemporaneous medical evidence" more weight than an opinion based on years of hindsight. *Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir. 1991). This case presents especially strong reasons for doing so because the later-issued opinion accounts for evidence not in existence as of the date last insured. In December of 2017, Dr. Cain adjudged Summers fit for at least sedentary work. Subsequent deterioration may have necessitated the additional limitations Dr. Cain opined in November 2019. But that deterioration is irrelevant to the question of disability because it occurred (if at all) after the date last insured. It made good sense to prioritize a medical opinion issued within the period under consideration, and the Court will not disturb the ALJ's decision to do so.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 3, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge